IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,                    )
                                             )
       Plaintiff                        )
                                             )
    v.                                       )
                                             )
SOUTHEASTERN GROCERS, INC., BI-LO, LLC,      )
and WINN-DIXIE STORES, INC.,                 )
                                             )
       Defendant.                       )

## CONSENT DECREE

# TABLE OF CONTENTS

I.     JURISDICTION, VENUE, AND NOTICE .................................................................. 3

II.     APPLICABILITY ................................................................................................ 4

III.     OBJECTIVES .................................................................................................... 6

IV.     DEFINITIONS .................................................................................................. 6

V.     CIVIL PENALTY ........................................................................................... 10

VI.     COMPLIANCE REQUIREMENTS ................................................................... 12

    A.     Refrigerant Compliance Management Plan ....................................... 12

    B.     Company-Wide Leak Rate Reduction ................................................ 12

    C.     Self-Evaluation Report Response Actions ......................................... 14

    D.     New Stores and Additional Upgrades ................................................ 15

VII.     PARTICIPATION IN RECOGNITION PROGRAMS ........................................ 16

VIII.     REPORTING REQUIREMENTS ..................................................................... 16

IX.     STIPULATED PENALTIES ............................................................................ 20

X.     FORCE MAJEURE ........................................................................................ 23

XI.     DISPUTE RESOLUTION ............................................................................... 25

XII.     INFORMATION COLLECTION AND RETENTION ........................................ 27

XIII.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ............................... 29

XIV.     COSTS .......................................................................................................... 30

XV.     NOTICES ...................................................................................................... 31

XVI.     EFFECTIVE DATE ........................................................................................ 32

XVII.     RETENTION OF JURISDICTION .................................................................. 32

XVIII.     MODIFICATION ........................................................................................... 33

**XIX.  TERMINATION** ................................................................................................ 33

**XX.  PUBLIC PARTICIPATION** ............................................................................... 34

**XXI.  SIGNATORIES/SERVICE** .................................................................................. 34

**XXII.  INTEGRATION** .................................................................................................. 35

**XXIII. FINAL JUDGMENT** ........................................................................................... 35

**XXIV. APPENDICES** ..................................................................................................... 35

WHEREAS, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree alleging that Defendant Southeastern Grocers, Inc. violated Section 608 of the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. § 7671g, and the commercial refrigerant repair and recordkeeping regulations at 40 C.F.R. Part 82, Subpart F, §§ 82.150-82.169 (Recycling and Emissions Reduction) (2016).

WHEREAS, Southeastern Grocers, Inc. was incorporated under the laws of the State of Delaware on May 30, 2018 and acquired the assets and liabilities of Southeastern Grocers, LLC on May 30, 2018.

WHEREAS, Southeastern Grocers, Inc. is the successor-in-interest to Southeastern Grocers, LLC.

WHEREAS, BI-LO, LLC was organized and established under the laws of the State of Delaware on August 15, 2000.

WHEREAS, Winn-Dixie Stores, Inc. was organized and established under the laws of the State of Florida on December 24, 1928. Amended and Restated Articles of Incorporation for Winn-Dixie Stores, Inc. were filed with the Florida Secretary of State on November 21, 2006 and again on May 24, 2018.

WHEREAS, the Complaint alleges that SEG, as defined below, has failed to comply with the leak repair and/or recordkeeping requirements of 40 C.F.R. Part 82, Subpart F (2016), at some or all of the grocery stores identified in Appendix A to this Consent Decree.

WHEREAS, on September 22, 2015, EPA issued an information request ("Information Request") to Southeastern Grocers, LLC pursuant to Section 114 of the Act, 42 U.S.C. § 7414, regarding the repair of leaks from commercial refrigeration appliances normally containing more

than 50 pounds of refrigerant that includes a class I or class II ozone-depleting substance, at 15 stores in Florida.

WHEREAS, on December 4, 2015, Southeastern Grocers, LLC submitted its responses to the Information Request, including more than 400 pages of records and information.

WHEREAS, on March 11, 2016, pursuant to Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), EPA issued a Finding of Violation ("FOV") finding that Southeastern Grocers, LLC, d/b/a Winn Dixie, violated the leak repair and/or recordkeeping requirements of 40 C.F.R. Part 82, Subpart F (2016) at five (5) grocery stores located in Jacksonville, Florida.

WHEREAS, on April 19, 2016, Southeastern Grocers, LLC submitted its responses to the FOV objecting to certain findings of EPA.

WHEREAS, on August 3, 2016, Southeastern Grocers, LLC submitted to EPA a self-evaluation plan to conduct a comprehensive evaluation of all refrigeration appliances at grocery stores, under its or its direct or indirect subsidiaries' ownership and/or operation, and based on the evaluation, propose response actions for each appliance that (i) had three or more leaks within a 12-month period and for which the cumulative leak rate was greater than 80% during that period, or (ii) that had a recorded leak for which the amount of added gas was uncertain. EPA approved the plan on August 6, 2016.

WHEREAS, on November 11, 2016, Southeastern Grocers, LLC submitted to EPA a Comprehensive Self-Evaluation Report for Targeted Air Conditioning and Refrigeration Systems ("Self-Evaluation Report") detailing the results of the comprehensive self-evaluation and proposing response actions. The Self-Evaluation Report included leak repair information for appliances that met certain criteria at 366 stores owned and/or operated by Southeastern Grocers,

LLC and/or its direct or indirect subsidiaries during the period May 1, 2014, through April 30, 2016.

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication of or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION, VENUE, AND NOTICE

1. This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355. Venue lies in this district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because some of the violations alleged in the Complaint occurred in, and one or more of the Defendants conducts business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consent to venue in this district.

2. The United States has given notice of the commencement of this action to the applicable air pollution control agencies as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## II.    APPLICABILITY

3.    The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendants and their successors and assigns, or other entities or persons otherwise bound by law, who receive actual notice of this Consent Decree by personal service or otherwise. [MMH]

4.    SEG shall cause a copy of this Consent Decree to be provided, either electronically or in paper form, to all of the respective officers, employees, agents, and contractors of SEG who SEG reasonably determines will provide any material amount of the work or services required by SEG to comply with this Consent Decree. SEG shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

5.    No transfer of ownership or operation of a Store, whether in compliance with the procedures of ~~this~~ Paragraph 6 (six) or otherwise, shall relieve SEG of its obligation to comply fully with [MMH] the Consent Decree with respect to all other Stores that remain under SEG's ownership or operation.

6.    At least 30 Days prior to any transfer of ownership or operation to a Transferee of any Store, SEG shall (i) provide a copy of this Consent Decree to the proposed Transferee; (ii) provide written notice of the prospective transfer to the United States in accordance with Section XV of this Decree (Notices); (iii) submit to the United States a plan to ensure that the Refrigerant Compliance Management Plan, or another refrigerant compliance management plan approved by EPA, is implemented at all such transferred Stores; and (iv) submit to the United States a plan to ensure SEG completes the Self-Evaluation Report Response Actions required for the Covered Refrigeration Equipment at all such transferred Stores (if any) within 180 days of the transfer of ownership or operation, or by the time required by the Self-Evaluation Report Response Actions, whichever is earlier. The prospective transfer shall automatically be deemed accepted unless the

4

United States notifies SEG within 17 Days from receipt of SEG's written notice of the prospective transfer. Any transfer of a Store without complying with this Paragraph constitutes a violation of this Consent Decree. After transfer of ownership or operation to a Transferee of any Store in compliance with this Paragraph, a Transferee's failure to implement the Refrigerant Compliance Management Plan, or another refrigerant compliance management plan approved by EPA, shall not constitute a violation of this Consent Decree by SEG.

7.     Paragraph 6 of this Consent Decree shall not be construed to require written notice to or consent from the United States for (1) Store closures for Stores that Retired (or will Retire) all Covered Refrigeration Equipment within 180 days of each respective Store closure date, (2) termination(s) or expiration(s) of Store leases for Stores that Retired (or will Retire) all Covered Refrigeration Equipment within 180 days of each respective Store closure date, (3) Store closures or the termination or expiration of Store leases for which the only Covered Refrigeration Equipment remaining at the Store (excluding Covered Refrigeration Equipment that will be Retired as provided in Subparagraphs (1) or (2) above) are comfort cooling appliances that were not owned by SEG prior to the closure, transfer, or lease termination or expiration; (4) relocation(s) of Stores, (5) relocation of Covered Refrigeration Equipment between Stores owned or operated by SEG; (6) changes in Store-level staffing and/or management, (7) the transfer, sale or assignment, of any equity interest (in whole or in part) in SEG or any direct or indirect SEG subsidiary, affiliate, or related entity, or (8) the transfer, sale or assignment, of any equity, ownership or operations of Stores or leases or other assets between any of the SEG Operating Entities.

8.     In any action to enforce this Consent Decree, SEG shall not raise as a defense the failure by any of SEG's officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.     OBJECTIVES

9.     The objectives of this Consent Decree are: (a) to further the goals of ensuring compliance with Subchapter VI of the Act, 42 U.S.C. §§ 7671-7671q, and EPA's commercial refrigerant repair and recordkeeping regulations at 40 C.F.R. Part 82, Subpart F, through the implementation of the injunctive relief set forth in Section VI (Compliance Requirements) by improving SEG's Refrigerant emissions management and recordkeeping systems, and (b) to resolve the civil claims of the United States as provided in Section XIII (Effect of Settlement/Reservation of Rights).

## IV.     DEFINITIONS

10.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations as of the date of lodging of this Decree, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Acquired Store" shall mean any Store for which the ownership or operations is/are acquired from a third-party entity by SEG, whether by the assignment of the lease, an asset purchase agreement or otherwise, from the date of lodging until this Consent Decree is terminated in accordance with Section XIX;

b.     "Additional Upgrades" shall have the definition provided in Paragraph 22;

c.     "Advanced Refrigerants" shall mean any of the following refrigerants: R-744, R-448A, R-449A, R-513A, R-450A, or an equivalent EPA-approved refrigerant;

d.     "Complaint" shall mean the complaint filed by the United States in this action;

e.     "Company-Wide Average Leak Rate" for a given Effective Year shall mean the sum of the total number of pounds of Refrigerant added to all Covered Refrigeration Equipment at all Stores during the period of SEG's ownership or operation in such Effective Year, divided by the total Full Charge (in pounds) of all Covered Refrigeration Equipment at all Stores owned or operated by SEG in such Effective Year, as calculated using the Company-Wide Average Leak Rate Formula in Appendix B (Leak Rate Formulas), which is attached to and incorporated into this Consent Decree;

f.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIV);

g.     "Covered Refrigeration Equipment" shall mean refrigeration equipment at any Store, including any refrigerator, chiller, freezer, or air conditioner, with a Full Charge of 50 pounds or more of Refrigerant;

h.     "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

i.     "Effective Date" shall have the definition provided in Section XVI;

j.    "Effective Year" shall mean the 12 consecutive month period beginning on the first of the month of the first full calendar month that occurs at least 60 days after the Effective Date.

k.    "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

l.    "Full Charge" shall have the definition provided in 40 C.F.R. § 82.152, except that "refrigerant" shall have the meaning of "Refrigerant" set forth in this Paragraph;

m.    "GWP Value" of a Refrigerant shall be the global warming potential value published by its manufacturer;

n.    "New Store" shall mean any Store opened by SEG from the date of lodging until this Consent Decree is terminated in accordance with Section XIX. A "New Store" includes any Store that is closed and relocated. A "New Store" does not include an "Acquired Store" unless such store was initially opened by a prior grocery operator (not affiliated with SEG) during the three calendar years after the year of the Effective Date.

o.    "Operating Entity" shall mean any corporate entity that is a direct or indirect subsidiary of Southeastern Grocers, Inc. that owns and/or is responsible for the operation of a Store and/or Covered Refrigeration Equipment, including but not limited to BI-LO, LLC and Winn-Dixie Stores, Inc. (or collectively the, "Operating Entities").

p.    "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral or an upper or lower case letter;

8

q.  "Parties" shall mean the United States, Southeastern Grocers, Inc., BI-LO, LLC, and Winn-Dixie Stores, Inc.;

r.  "Refrigerant" shall mean any substance used as a heat transfer fluid or gas including ozone-depleting substances, and their substitutes found acceptable by EPA's Significant New Alternatives Policy Program set forth at 40 C.F.R. Part 82, Subpart G. For purposes of this subparagraph, "Refrigerant" shall not include secondary loop fluid, such as propylene glycol, in a secondary loop refrigeration system;

s.  "Refrigerant Compliance Management Plan" shall mean the Refrigerant Compliance Management Plan (attached as Appendix C and incorporated into this Consent Decree) prepared by Southeastern Grocers, LLC and approved by EPA that is designed to ensure compliance with Subchapter VI of the Act, 42 U.S.C. §§ 7671-7671q, and EPA's commercial refrigerant repair and recordkeeping regulations at 40 C.F.R. Part 82, Subpart F, by improving SEG's Refrigerant emissions management and recordkeeping systems. The Refrigerant Compliance Management Plan includes any subsequent amendments or changes to such plan made in accordance with Paragraph 15 of this Consent Decree;

t.  "Retire," "Retired," or "Retiring" shall have the definition provided in 40 C.F.R. § 82.152;

u.  "Section" shall mean a portion of this Decree identified by a Roman numeral;

v.     "SEG" shall mean Defendant Southeastern Grocers, Inc. (formerly, Southeastern Grocers, LLC) and the Operating Entities;

w.    "Self-Evaluation Report Response Actions" shall have the definition provided in Paragraph 18;

x.    "Store" shall mean any store that contains any Covered Refrigeration Equipment and is owned or operated by SEG (i) as of the date of lodging of this Decree, or (ii) from the date of lodging of this Decree through the date of termination of this Decree in accordance with Section XIX;

y.    "Store Leak Rate" for a given Effective Year shall mean the sum of the total number of pounds of Refrigerant added to all Covered Refrigeration Equipment at a Store during the period of SEG's ownership or operation in such Effective Year, divided by the sum of the total Full Charge (in pounds) of all Covered Refrigeration Equipment at a Store owned or operated by SEG in such Effective Year, as calculated using the Store Leak Rate Formula in Appendix B (Leak Rate Formulas), which is attached to and incorporated into this Consent Decree; and

z.    "Transferee" or "Transferees" shall mean a third-party company or operator that is not a direct or indirect subsidiary of SEG.

aa.   "United States" shall mean the United States of America, acting on behalf of EPA;

## V.   CIVIL PENALTY

11.    Within 30 Days after the Effective Date of this Consent Decree, SEG shall pay the sum of $300,000 as a civil penalty.

12.     Defendants shall pay the civil penalty due at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Middle District of Florida after the Effective Date. The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Jordan Post
> Senior Vice President – Store Development & Real Estate
> 8928 Prominence Parkway, Building 200
> Jacksonville, Florida 32256
> Office:  904-370-7775
> Email:  JordanPost@segrocers.com

> With copy to:

> Southeastern Grocers, Inc.
> Attn: Legal Department
> 8928 Prominence Parkway, Building 200
> Jacksonville, Florida 32256

on behalf of Defendants. Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XV (Notices). At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA via email at acctsreceivable.cinwd@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XV (Notices); and (iii) to EPA in accordance with Section XV (Notices). Such notice shall reference the CDCS Number and DOJ case number 90-5-2-1-11839.

13.     Defendants shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating their federal income taxes.

## VI.     COMPLIANCE REQUIREMENTS

### A.     Refrigerant Compliance Management Plan

14.     Starting no later than 30 Days after the Effective Date, SEG shall cause the implementation of the Refrigerant Compliance Management Plan at all Stores owned or operated by SEG. A violation of the Refrigerant Compliance Management Plan shall be a violation of this Consent Decree.

15.     Prior to implementing any amendments or changes to the Refrigerant Compliance Management Plan, SEG shall submit a revised Refrigerant Compliance Management Plan to EPA along with a letter identifying the amendments or changes. The Refrigerant Compliance Management Plan shall automatically be deemed amended or changed by such proposed amendments or changes 30 days after the EPA has received SEG's submission, unless the EPA notifies SEG in writing prior to such date that it declines to approve such amendments or changes and provides written comments. Within 30 days of receiving EPA's written notification, SEG shall either (i) revise the Refrigerant Compliance Management Plan consistent with EPA's written comments and submit the revised Refrigerant Compliance Management Plan to EPA, (ii) withdraw the submitted proposed amendments or changes to the Refrigerant Compliance Management Plan, or (iii) invoke Dispute Resolution under Section XI of this Consent Decree.

### B.     Company-Wide Leak Rate Reduction

16.     SEG shall achieve a Company-Wide Average Leak Rate that is at or below 21.0%, 19.0%, and 17.0% for the each of the first, second, and third Effective Years, respectively.

17.    If SEG fails to achieve a Company-Wide Average Leak Rate that is at or below 21.0%, 19.0%, and 17.0% for any of the first, second, and third Effective Years, respectively, in accordance with Paragraph 16, SEG shall take the following measures:

a.    SEG shall pay stipulated penalties pursuant to Section IX of this Consent Decree.

b.    Within 90 days following the Effective Year in which SEG failed to achieve a Company-Wide Average Leak Rate that is at or below 21.0% for the first Effective Year, 19.0% for the second Effective Year, and/or 17.0% for the third Effective Year, in accordance with Paragraph 16, SEG shall submit to EPA a proposed Corrective Action Plan for approval pursuant to this Consent Decree. The proposed Corrective Action Plan shall include a description of all actions taken or to be taken to ensure that SEG achieves a Company-Wide Average Leak Rate that is at or below 19.0% for the second Effective Year, and 17.0% for the third Effective Year and each Effective Year thereafter as set forth in Paragraph 17.d below, and, with respect to actions not already completed, the schedule for their implementation. EPA shall, in writing, either (a) approve the proposed Corrective Action Plan; (b) approve the proposed Corrective Action Plan and provide written comments; (c) approve part of the proposed Corrective Action Plan, disapprove the remainder, and provide written comments; or (d) disapprove the proposed Corrective Action Plan and provide written comments. Within 30 Days of receiving EPA's written comments, SEG shall either (i) revise the Corrective Action Plan consistent with EPA's written comments and

submit the revised Corrective Action Plan to EPA for final approval, or (ii) invoke Dispute Resolution under Section XI of this Consent Decree. To the extent the proposed Corrective Action Plan requires action prior to receipt of EPA's approval or disapproval, SEG shall cause the proposed Corrective Action Plan to be implemented in accordance with the schedule set forth therein until EPA approves a Corrective Action Plan or a Corrective Action Plan is completed pursuant to Dispute Resolution.

    c.    Upon receipt of EPA's approval of the Corrective Action Plan, or upon completion of the Corrective Action Plan pursuant to Dispute Resolution, SEG shall cause implementation of the Corrective Action Plan in accordance with the schedule set forth therein.

    d.    If SEG fails to achieve a Company-Wide Average Leak Rate that is at or below 17.0% for the third Effective Year, SEG shall continue to be subject to a Company-Wide Average Leak Rate that is at or below 17.0% and shall continue to take the measures set forth in this Paragraph each subsequent Effective Year until it achieves a Company-Wide Average Leak Rate that is at or below 17.0% percent for an Effective Year.

**C.**    **Self-Evaluation Report Response Actions**

18.    SEG shall cause the response actions for each targeted commercial refrigeration system identified in the Response Action Schedule (attached as Appendix D and incorporated into this Consent Decree) (hereafter, the "Self-Evaluation Report Response Actions") to be completed according to the Response Action Schedule, except that any Covered Refrigeration Equipment subject to a Self-Evaluation Report Response Action may be Retired by the required date for the

14

Self-Evaluation Report Response Action in lieu of completing the Self-Evaluation Report Response Action, provided, however, that SEG may not reuse or sell any Retired appliance component (compressor, condenser, etc.) identified in Appendix E (Restricted Component List) unless SEG first obtains written approval from EPA.

19.     Subject to the limitations set forth in Paragraph 18, if any Self-Evaluation Report Reponse Actions have not been completed by the deadlines established in Appendix D (Response Action Schedule), SEG shall pay stipulated penalties pursuant to Section IX of this Consent Decree.

20.     The Self-Evaluation Report Response Actions may be modified only by a subsequent written agreement signed by the Parties.

### D.     Mitigation Projects: New Stores and Additional Upgrades

21.     SEG shall ensure that all Covered Refrigeration Equipment in any New Store uses only Advanced Refrigerants, provided, however, that any Covered Refrigeration Equipment sourced from and shared with an existing Store shall be excepted from this requirement so long as the Full Charge of such equipment does not increase.

22.     Each Effective Year during the first, second, and third Effective Years, SEG shall identify five (5) Stores containing Covered Refrigeration Equipment that do not use an Advanced Refrigerant and shall convert (whether by retrofit or replacement at SEG's discretion) all Covered Refrigeration Equipment at each of the five (5) identified Stores to use only Advanced Refrigerants (hereinafter, an "Additional Upgrades"). The conversion of the Covered Refrigeration Equipment to use Advanced Refrigerants at the five identified Additional Upgrades shall be completed during the Effective Year that the Additional Upgrades are identified. No Store that is required to convert Covered Refrigeration Equipment pursuant to the Self-Evaluation Report, as provided in

15

Paragraph 18 above, may be identified as an Additional Upgrade to meet this Paragraph of the Consent Decree. SEG shall ensure that all Covered Refrigeration Equipment in any Additional Upgrade uses only Advanced Refrigerants following the completion of the conversion of the Covered Refrigeration Equipment to use Advanced Refrigerants.

## VII.    PARTICIPATION IN RECOGNITION PROGRAMS

23.    SEG shall not seek store certification from, or partnership in, any federal or state recognition program designed primarily to reduce the use or release of ozone-depleting substances, including EPA's GreenChill Advanced Refrigeration Partnership, until termination of this Consent Decree. This Paragraph shall not be construed to prohibit SEG from exchanging data or information with or through any such recognition program.

## VIII.   REPORTING REQUIREMENTS

24.    No later than 90 days after each Effective Year, continuing until the Parties have submitted for the Court's approval a joint stipulation terminating the Consent Decree or the Consent Decree is otherwise terminated pursuant to Section XIX (Termination), SEG shall submit to the United States a Compliance Report that includes the following information for the prior Effective Year:

> a.    a list of all Stores, noting all Acquired Stores, New Stores, openings, closings, lease terminations, lease expirations, and transfers of ownership or operation;
>
> b.    a list of all Covered Refrigeration Equipment at each Store, which includes manufacturer, model, and year of Covered Refrigeration Equipment, Refrigerant used in such Covered Refrigeration Equipment, and its Full Charge, in pounds, as of the last day of such Effective Year;

16

c.     a list of Retired Covered Refrigeration Equipment;

d.     a list of Covered Refrigeration Equipment that has been relocated to a different Store that is owned or operated by SEG;

e.     a list of in-process (with expected completion date) and completed Additional Upgrades;

f.     the number of pounds of Refrigerant added to each piece of Covered Refrigeration Equipment and the Store Leak Rate at each Store;

g.     the Company-Wide Average Leak Rate;

h.     a description of the Preventative Leak Check program implemented pursuant to Section E.2. of the Refrigerant Compliance Management Plan;

i.     a description of the System Integrity Check program implemented pursuant to Section E.3. of the Refrigerant Compliance Management Plan;

j.     a certification of compliance with the Refrigerant Compliance Management Plan during the prior Effective Year, or a description of all incidences of noncompliance with the Refrigerant Compliance Management Plan during the prior Effective Year and a certification of otherwise compliance with the Refrigerant Compliance Management Plan;

k.     a certification that the Self-Evaluation Report Response Actions required by Section VI.C. and the Response Action Schedule (attached in Appendix D to this Consent Decree) have been completed by the timeframes specified in the Response Action Schedule during the prior Effective Year, or a description of all incidences of noncompliance during the prior Effective

Year and a certification of otherwise compliance with the Self-Evaluation Report Response Actions;

l.      a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the Compliance Report is due, SEG shall so state in the report. SEG shall investigate the cause of the violation and shall then submit an amendment to the Compliance Report, including a full explanation of the cause of the violation, within 60 Days of the day SEG becomes aware of the cause of the violation;

m.      an affirmative statement regarding compliance or noncompliance with 40 C.F.R. Part 82, Subpart F, at the Stores during the prior Effective Year (not required for SEG initial Compliance Report); and

n.      beginning with the Compliance Report covering the first Effective Year, the following information regarding Advanced Refrigerants in Covered Refrigeration Equipment at each New Store and Additional Upgrade pursuant to Section VI.D: (1) Store location; (2) Refrigerant used; (3) Full Charge; (4) Store Leak Rate; (5) details of where/how leaks occurred; and (6) a brief summary of monthly energy use by such equipment and in comparison to refrigeration systems with similar age, capacity, component efficiencies, and ambient conditions, as evidenced by monthly utility bills.

25.     Data in each Compliance Report submitted by SEG under this Section shall be submitted in Microsoft Excel or equivalent spreadsheet form. SEG shall submit each Compliance Report to the United States in electronic form in accordance with the requirements of Section XV (Notices) of this Consent Decree. SEG hardcopy submissions of each hardcopy Compliance Report, including data, will serve as the official copies of SEG's submissions and will be used to determine compliance with the terms of this Consent Decree.

26.     Each Compliance Report submitted by SEG under this Section shall be signed by a SEG official and shall include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

27.     Whenever any violation of this Consent Decree or any other event affecting SEG's performance under this Decree, or the performance of its Stores, may pose an immediate threat to the public health or welfare or the environment, SEG shall notify EPA and the National Response Center orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after SEG first knew of the violation or event. This procedure is in addition to the requirements set forth in Paragraphs 24 through 26.

28.     The reporting requirements of this Consent Decree do not relieve SEG of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

29.    Subject to paragraph 62 below, any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

30.    SEG may request an extension of the deadline for submitting a Compliance Report pursuant to this Section, provided that such request is made 45 Days prior to the deadline for submission of the Compliance Report. The United States may grant or reject the request in its sole unreviewable discretion.

## IX.    STIPULATED PENALTIES

31.    SEG shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

32.    Payment of Civil Penalty. If SEG fails to pay the civil penalties required to be paid under Section V of this Decree (Civil Penalty) when due, SEG shall pay a stipulated penalty of $2,500 for each Day that the payment is late.

33.    Store Transfer. If SEG transfers a Store to a Transferee and fails to comply with the requirements of Paragraph 6 of this Decree (pre-transfer requirements), SEG shall pay a stipulated penalty of $35,000.

34.    Refrigerant Compliance Management Plan. For each failure to implement the Refrigerant Compliance Management Plan at a Store as required by Section VI.A, SEG shall pay a stipulated penalty of $500 per violation per Day until the date on which the applicable required implementation is completed.

35.     Company-Wide Average Leak Rate. If SEG fails to achieve a Company-Wide Average Leak Rate that is at or below 21.0%, 19.0%, and 17.0% for the each of the first, second, and third Effective Years, respectively, in accordance with Section VI.B, SEG shall pay stipulated penalties as follows:

| Company-Wide Leak Rate | First Effective Year | Second Effective Year | Third Effective Year and Subsequent Years |
|---|---|---|---|
| Greater than 21.0% | $50,000 | $100,000 | $150,000 |
| Greater than 19.0% but less than or equal to 21.0% | N/A | $50,000 | $100,000 |
| Greater than 17.0% but less than or equal to 19.0% | N/A | N/A | $50,000 |

36.     Self-Evaluation Report Response Actions. If SEG fails to complete a response action required to be completed under Section VI.C, SEG shall pay a stipulated penalty of $1,000 for each Day that the response action is unfinished.

37.     Advanced Refrigeration at New Stores and Additional Upgrades. If, during any of the three Effective Years, SEG uses a refrigerant other than an Advanced Refrigerant in any Covered Refrigeration Equipment in a New Store or Additional Upgrade, SEG shall pay a stipulated penalty of $1,000 per Day of such use.

38.     Reporting Requirements. If a Compliance Report is not timely submitted pursuant to Section VIII, SEG shall pay a stipulated penalty of $1,000 per violation per Day unless an extension of the deadline is requested from the EPA in advance of the deadline and EPA grants such request. A Compliance Report that does not meet any of the requirements in Paragraphs 24-26 is not considered timely until all of the requirements are met.

39.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed, until the violation ceases, or EPA waives compliance. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

40.     SEG shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

41.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

42.     Stipulated penalties shall continue to accrue as provided in Paragraph 39 during any Dispute Resolution, but need not be paid until the following:

      a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, SEG shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

      b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, SEG shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph 42.c, below.

      c.     If any Party appeals the District Court's decision, SEG shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

43.    SEG shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 12, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

44.    If SEG fails to pay stipulated penalties according to the terms of this Consent Decree, SEG shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for SEG failure to pay any stipulated penalties.

45.    Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for SEG's violation of this Decree or applicable law. Where a violation of this Consent Decree is also a violation of Section 608 of the Act or 40 C.F.R. Part 82, Subpart F, SEG shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## X.    FORCE MAJEURE

46.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of SEG, of any entity controlled by SEG, or of SEG's contractors, that impedes – *i.e.*, delays or prevents – the performance of any obligation under this Consent Decree despite SEG's best efforts to fulfill the obligation. The requirement that SEG exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting impediment to the greatest extent

possible. "Force Majeure" does not include SEG's financial inability to perform any obligation under this Consent Decree.

47.     If any event occurs or has occurred that may impede the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, SEG shall provide notice orally or by electronic or facsimile transmission to EPA, within 7 Days of when SEG first knew that the event might cause an impediment. Within 30 Days thereafter, SEG shall provide in writing to EPA an explanation and description of the reasons for the impediment; the duration or anticipated duration of the impediment; all actions taken or to be taken to prevent or minimize the impediment; a schedule for implementation of any measures taken or to be taken to prevent or mitigate the impediment or the effect of the impediment; SEG's rationale for attributing such impediment to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of SEG, such event may cause or contribute to an endangerment to public health, welfare, or the environment. SEG shall include with any notice all available documentation supporting the claim that the impediment was attributable to a force majeure. Failure to comply with the above requirements shall preclude SEG from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional impediment caused by such failure. SEG shall be deemed to know of any circumstance of which SEG, any entity controlled by SEG, or SEG's contractors knew or should have known.

48.     If EPA agrees that the impediment or anticipated impediment is attributable to a force majeure event, EPA will extend the time for performance of the obligations under this Consent Decree that are affected by the force majeure event for such time as is necessary to complete those obligations and/or reduce or waive stipulated penalties otherwise due under this Decree as a result of SEG's failure to perform such obligations. An extension of the time for

24

performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify SEG in writing of its decision, including the length of any extension for performance of the obligations affected by the force majeure event.

49.     If EPA does not agree that the impediment or anticipated impediment has been or will be caused by a force majeure event, EPA will notify SEG in writing of its decision.

50.     If SEG elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 30 Days after receipt of EPA's notice. In any such proceeding, SEG shall have the burden of demonstrating by a preponderance of the evidence that the impediment or anticipated impediment has been or will be caused by a force majeure event, that the duration of the impediment, or the relief sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the impediment, and that SEG complied with the requirements of Paragraphs 46 and 47, above. If SEG carries this burden, the impediment at issue shall be deemed not to be a violation by SEG of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI.     DISPUTE RESOLUTION

51.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. SEG's failure to seek resolution of a dispute under this Section shall preclude SEG from raising any such issue as a defense to an action by the United States to enforce any obligation of SEG arising under this Decree.

52.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered

to have arisen when SEG sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, SEG invokes formal dispute resolution procedures as set forth below.

53.     Formal Dispute Resolution. SEG shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting SEG's position and any supporting documentation relied upon by SEG.

54.     The United States shall serve its Statement of Position within 45 Days of receipt of SEG's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on SEG, unless SEG files a motion for judicial review of the dispute in accordance with the following Paragraph.

55.     SEG may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 14 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of SEG's position on the matter in dispute, including any supporting

factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute ~~must be resolved for~~ the movant seeks resolution of the orderly implementation of the Consent Decree. 

56. The United States shall respond to SEG's motion within the time period allowed by the Local Rules of this Court. SEG may seek leave to file a reply memorandum, ~~to the extent permitted by~~ in accordance with the Local Rules. 

57. <u>Standard of Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 53, SEG shall bear the burden of demonstrating that its position fulfills the terms, conditions, and requirements and objectives (as set forth in Section III of this Consent Decree) of this Consent Decree and that it is entitled to relief under applicable principles of law. In their initial filings with the Court, under Paragraphs 55 and 56, the Parties shall state their respective positions as to the applicable standard of law for resolving the dispute.

58. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of SEG under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 42. If SEG does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.  INFORMATION COLLECTION AND RETENTION

59. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Store covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.  monitor the progress of activities required under this Consent Decree;

b.  verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.  obtain documentary evidence, including photographs and similar data; and

d.  assess SEG's compliance with this Consent Decree.

60.  Until 5 years after the termination of this Consent Decree, SEG shall retain, and shall instruct its contractors and agents to preserve, all documents, records, or other information (including documents, records, or other information in electronic form) necessary to demonstrate SEG's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, SEG shall provide copies of any documents, records, or other information required to be maintained by SEG under this Paragraph.

61.  At the conclusion of the information-retention period provided in the preceding Paragraph, SEG shall notify the United States at least 90 Days prior to the destruction of any documents, records or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, SEG shall deliver any such documents, records, or other information to EPA. SEG may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If SEG asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the

privilege asserted by SEG. However, no documents, records, or other information required to be created or generated under this Consent Decree shall be withheld on grounds of privilege.

62.     SEG may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that SEG seeks to protect as CBI, SEG shall follow the procedures set forth in 40 C.F.R. Part 2.

63.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of SEG to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

64.     This Consent Decree resolves the civil claims of the United States against SEG for any violations of 40 C.F.R. §§ 82.156(i), 82.166(k), or 82.166(m) (2016) at the Stores arising out of facts and events that occurred prior to the date of lodging, including the civil claims of the United States for the violations alleged in the Complaint through the date of lodging.

65.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 64. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 64.

66.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Stores, SEG shall

not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 64.

67. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. SEG is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and SEG's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that SEG's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits.

68. This Consent Decree does not limit or affect the rights of SEG or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against SEG, except as otherwise provided by law.

69. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV. COSTS

70. The Parties shall bear their own costs of this action, including attorney's fees, except that the United States shall be entitled to collect the costs (including attorney's fees)

incurred in any judicial enforcement action necessary to collect any portion of the civil penalties or any stipulated penalties due but not paid by SEG.

## XV.   NOTICES

71.   Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:
EESCaseManagement.ENRD@usdoj.gov
Re: DJ # 90-5-2-1-11839

As to the United States by mail:
EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-5-2-1-11839

As to EPA:
Christopher Grubb
Associate Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 W. Jackson Blvd., C-14J
Chicago, IL 60604
Telephone: (312) 886-7187
E-mail: grubb.christopher@epa.gov

Charles Hall
Environmental Engineer
U.S. Environmental Protection Agency, Region 5
77 W. Jackson Blvd., AE-18J
Chicago, IL 60604
Telephone: (312) 353-3443
E-mail: hall.charles@epa.gov

Compliance Tracker
U.S. Environmental Protection Agency
Region 5, Chicago
E-mail: r5airenforcement@epa.gov

As to SEG:
Jordan Post
Senior Vice President – Real Estate

8928 Prominence Parkway, Building 200
Jacksonville, Florida 32256
Office: 904-370-7775
Email: JordanPost@segrocers.com

With copy to:

Southeastern Grocers, Inc.
Attn: Legal Department
8928 Prominence Parkway, Building 200
Jacksonville, Florida 32256

72.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided in Paragraph 71 of this Consent Decree.

73.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or electronic mailing, as applicable, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.    EFFECTIVE DATE

74.     The Effective Date of this Consent Decree shall be the date upon which this Decree is entered by the Court or a motion to enter the Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII.   RETENTION OF JURISDICTION

75.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

76.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

77.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 57, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.   TERMINATION

78.    No sooner than three years after the Effective Date, after SEG has completed the requirements of Section VI (Compliance Requirements) of this Consent Decree, has complied with all other requirements of this Decree, and has paid the civil penalties and any accrued stipulated penalties as required by this Decree, SEG may serve upon the United States a Request for Termination, stating that SEG has satisfied those requirements, together with all necessary supporting documentation.

79.    Following receipt by the United States of SEG's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether SEG has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

80.    If the United States does not agree that the Consent Decree may be terminated, SEG may invoke Dispute Resolution under Section XI of this Decree. However, SEG shall not seek

Dispute Resolution of any dispute regarding termination, under Paragraph 53 of Section XI, until 60 Days after service of its Request for Termination.

## XX. PUBLIC PARTICIPATION

81.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. SEG consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified SEG in writing that it no longer supports entry of the Decree.

## XXI. SIGNATORIES/SERVICE

82.     Each undersigned representative of SEG and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

83.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. SEG agrees to accept service of process by email and/or mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII. INTEGRATION

84.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIII. FINAL JUDGMENT

85.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and SEG.

## XXIV. APPENDICES

86.     The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the list of Stores as of the date of lodging of the Consent Decree.

"Appendix B" is the Leak Rate Formulas.

"Appendix C" is the Refrigerant Compliance Management Plan.

"Appendix D" is the Response Action Schedule.

"Appendix E" is the Restricted Component List.

Dated and entered this 21 day of January, 2020.

Marcia Morales Howard
United States District Judge
Middle District of Florida

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Southeastern Grocers, Inc.* (M.D. Fla.), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA:


8/2/19
Date

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice



8/20/19
Date

RACHAEL AMY KAMONS
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 514-5260
Facsimile: (202) 616-2427
E-mail: Rachael.Kamons@usdoj.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Southeastern Grocers, Inc.* (M.D. Fla.), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA (Continued):

MARIA CHAPA LOPEZ
United States Attorney
Middle District of Florida

8/23/2019
Date

RONNIE S. CARTER
Assistant United States Attorney
Florida Bar No. 0948667
United States Courthouse
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202-4270
Telephone No. (904) 301-6283/6300
Facsimile No. (904) 301-6310
Email: Ronnie.Carter@usdoj.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Southeastern Grocers, Inc.* (M.D. Fla.), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA (Continued):

6-19-19
Date

*Jane M. Tipton* as Acting Regional Counsel
T. LEVERETT NELSON
Regional Counsel
U.S. Environmental Protection Agency, Region 5

Of Counsel:
Christopher Grubb
Associate Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 W. Jackson Blvd., C-14J
Chicago, IL 60604
Telephone: (312) 886-7187
E-mail: grubb.christopher@epa.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Southeastern Grocers, Inc.* (M.D. Fla.), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR DEFENDANT SOUTHEASTERN GROCERS, INC.

3/31/19
_____
Date

_____
Brian Carney
Executive Vice President & Chief Financial Officer
Southeastern Grocers, Inc.

LEGAL: APPROVED
ATTY: _____
DATE: 5/31/19

39

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Southeastern Grocers, Inc.* (M.D. Fla.), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR DEFENDANT BI-LO, LLC:

5/31/19
_____
Date

_____
Brian Carney
Executive Vice President & Chief Financial Officer
BI-LO, LLC

LEGAL: APPROVED
ATTY:
DATE: 5/31/19

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Southeastern Grocers, Inc.* (M.D. Fla.), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR DEFENDANT WINN-DIXIE STORES, INC.:

5/31/19
_____
Date

_____
Brian Carney
Executive Vice President & Chief Financial Officer
Winn-Dixie Stores, Inc.

LEGAL APPROVED
ATTY:
DATE: 5/31/19

41